UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

STANLEY TAYLOR,

        Plaintiff,

  -v-                                             No.  17 CV 5522-LTS

CITY OF NEW YORK ADMINISTRATION
FOR CHILDREN SERVICES and KIM
TAYLOR,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Pro se Plaintiff Stanley Taylor ("Plaintiff") brings this action against Defendants City of New York Administration for Children Services ("ACS") and Kim Taylor (together, "Defendants").  In his Second Amended Complaint (docket entry no. 40 (the "SAC")), Plaintiff asserts claims for violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. (the "ADA"), the New York State Human Rights Law, New York Executive Law §§ 290, et seq. (the "NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 et seq. (the "NYCHRL").  Taylor alleges principally that his employment was terminated in retaliation for taking disability leaves.

        The Court has jurisdiction of Plaintiff's claims under the ADA and the Rehabilitation Act pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted. (See docket entry no. 43.) The Court has reviewed thoroughly all of the parties' submissions and arguments. For the following reasons, the Defendants' motion to dismiss the Second Amended Complaint is granted.

### BACKGROUND

The following summary is drawn from the SAC and from documents relied upon by or incorporated by reference into the SAC. The allegations of the SAC are presumed to be true for the purposes of this motion practice.

In June 2012, Defendant ACS appointed Plaintiff as a Juvenile Counselor ("JC"), tasking him with the responsibility of supervising and ensuring the safety of ACS juvenile facility residents. (SAC at 1-2; see also Article 78 proceeding decision of Hon. Manuel J. Mendez, SAC Exhs. at 43-45 ("Mendez Decision").)[1] As part of his employment agreement, Plaintiff agreed to complete a one-year probationary period. (SAC at 1; Mendez Decision at 43.) Prior to commencing his employment, he also participated in a three-day Safe Crisis Management (SCM) training program in which he was taught how to restrain residents. (SAC at 1; Mendez Decision at 44.)

As a result of two separate work-related assaults at ACS, Plaintiff took two worker's compensation leaves of absence between September 18, 2012 and February 23, 2016. (SAC at 1; Mendez Decision at 43.) Upon return from his second leave of absence, Plaintiff was assigned to the ACS Crossroads Juvenile Center ("Crossroads"). (Mendez Decision at 43.) On

---

[1] All references to exhibits to the SAC will reference the ECF-generated page number of docket entry 40-1, as all exhibits were compiled and filed as one single exhibit, which was attached to the SAC (docket entry no. 40) on ECF.

February 26, 2016, Plaintiff was involved in an incident at the Crossroads facility with a sixteen-year old resident (the "Incident").  (SAC at 2; Mendez Decision at 43.)  In an effort to restrain the resident, who was charging towards him, Plaintiff dove head first into the resident's stomach.  (SAC at 2; Mendez Decision at 43.)  Video surveillance footage captured the Incident. (SAC at 2; Mendez Decision at 43.)  As a result of the altercation, Plaintiff was injured and subsequently approved for a third worker's compensation leave of absence, which commenced on February 29, 2016. (SAC Exh. at 11.)

On March 1, 2016, Defendant Associate Juvenile Counselor ("AJC") Kim Taylor ("Defendant Taylor") advised Plaintiff that he had violated provisions of the ACS Standards of Conduct by failing to properly and timely submit an incident report.  (SAC at 2; Mendez Decision at 44.)  That same day, Defendant Taylor submitted her reports regarding the Incident and Plaintiff's other violations, and, according to Plaintiff, threatened to terminate Plaintiff if he continued to be out of work on an approved worker's compensation leave of absence.  (SAC at 2; SAC Exhs. at 26-27.)

By memoranda dated April 8, 2016, the Director of Administration and the Executive Director of ACS each recommended that Plaintiff be terminated from his employment because the type of restraint he used during the Incident was improper, unauthorized and could have caused serious injury to the juvenile ACS resident.  (Mendez Decision at 44.)  By letter dated April 15, 2016, Plaintiff was notified that his employment with ACS was terminated.  (Id.; SAC Exh. at 12.)  On May 19, 2016, the New York State Justice Center for Protection of People with Special Needs Vulnerable Persons Central Registry substantiated the allegations of Category 3 physical abuse of the resident by Plaintiff for "excessive force and improper

technique," as well as the deliberate and inappropriate use of restraints upon the resident. (Mendez Decision at 44; SAC Exh. at 47.)

In August 2016, Plaintiff challenged his termination from ACS in a special proceeding in the Supreme Court of the State of New York, New York County, pursuant to Article 78 of the New York Civil Practice Law and Rules (CPLR). (Mendez Decision at 43.) Plaintiff alleged that he was wrongfully penalized for his actions in restraining the inmate during the Incident, and for the untimely filing of an incident report. (Id.) He argued that his discharge from ACS was "arbitrary, capricious, and in retaliation for his lengthy time on workers compensation leave of absence." (Id. at 44.) With regard to the method of restraint he used on the resident, Plaintiff claimed that "he was being charged by someone that [was] larger in stature than him, and that his actions were a proper means of protecting himself from worse injuries than he actually sustained." (Id.) Regarding the untimely filing of the incident report, Plaintiff claimed that Defendant Taylor retaliated against him for taking worker's compensation leave of absence by "maliciously and intentionally distort[ing] the facts in her incident reports" regarding Plaintiff's violations. (Id.) Plaintiff argued that he was wrongfully terminated as a probationary employee because Defendants never performed evaluations of his work during the probationary period. (Id.)

In his decision, dated May 19, 2017, the Honorable Manuel Mendez stated that a probationary employee may be discharged "without a hearing or statement of reasons, for almost any reason or no reason at all, in the absence of a demonstration that the dismissal was based on bad faith, 'a constitutionally impermissible purpose or in violation of statutory or decisional law.'" (Id.) Based on the evidence presented, Justice Mendez determined that Plaintiff had been terminated for the improper and inappropriate restraint on the resident during the Incident, and

not for untimely or improper filing of an incident report.  (Id. at 45.)  Justice Mendez also found that the Defendants had established Plaintiff's status as a probationary employee and that, as a result, his claims were not legally cognizable.  (Id.)  For these reasons, and because Plaintiff "did not provide competent proof of bad faith, or that the tackling restraint used was the proper and only means of dealing with the resident," Justice Mendez held that Plaintiff's allegations only raised factual disputes and did not entitle him to a hearing.  (Id.)  Consequently, the court denied Plaintiff's petition to be reinstated to his former position as Juvenile Counselor at ACS, together with back pay, return to seniority, and claims for damages.  (Id.)

In December 2016, Plaintiff filed a charge of discrimination against the Defendants with the United States Equal Employment Opportunity Commission ("EEOC").  (SAC Exh. at 6.)  On April 30, 2017, Plaintiff received a Notice of Right to Sue, dated April 26, 2017, from the EEOC.  (Id.)  Plaintiff commenced the instant action on July 19, 2017, by presenting his initial complaint and an application for leave to proceed in forma pauperis to the Pro Se Office of this Court.  (See docket entry nos. 1-2.)

## DISCUSSION

Defendants, moving pursuant to Federal Rule of Civil Procedure 12(b)(6), argue that Plaintiff's claims should be dismissed because they are barred under the doctrine of collateral estoppel.  Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content plead that "allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under the Rule 12(b)(6) standard, the court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  While a pro se complaint must be construed liberally and interpreted to raise the strongest arguments that it suggests, the complaint must still state a plausible claim for relief.  Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013).

A court may dismiss a claim at the pleading stage on preclusion grounds.  See Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir.1993).  Under New York law, the doctrine of collateral estoppel, also known as issue preclusion, bars the re-litigation of issues in a second proceeding if "[1] the identical issue was necessarily decided in the prior action and is decisive in the present action, and [2] the party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior determination." Cohen v. Touro Coll., 1998 U.S. App. LEXIS 22349, at *3 (2d Cir. Mar. 13, 1998) (internal quotation marks omitted).  Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  Kremer v. Chem Const. Corp., 456 U.S. 461, 466 (1982); see also Cohen, 1998 U.S. App. LEXIS 22349, at *4 (affirming dismissal of plaintiff's federal action on grounds of collateral estoppel where finding of fact made in plaintiff's Article 78 proceeding necessarily barred plaintiff from recovering under the claims raised in his federal action, and plaintiff had a full and fair opportunity to litigate his claims in the prior proceeding).

For the following reasons, the Court finds that Plaintiff is collaterally estopped by the Mendez Decision from pursuing the federal claims that he asserts in this action.  First, Plaintiff's federal complaint raises the same issues, and is based on the same factual events, as

those adjudicated in his Article 78 proceeding.  In both forums, Plaintiff has alleged that his termination from ACS was in retaliation for his lengthy time on worker's compensation leave of absence.  <u>Compare</u> SAC at 2 <u>with</u> Mendez Decision at 44.  His Second Amended Complaint is based on the same facts that were alleged in his Article 78 proceeding, including the details surrounding the Incident and his alleged failure to submit a timely incident report.  <u>Compare</u> SAC at 1-3 <u>with</u> Mendez Decision at 43-44.  Plaintiff also seeks the same relief he sought in his Article 78 proceeding: reinstatement with back pay and restoration of his seniority.  <u>Compare</u> SAC at 3 <u>with</u> Mendez Decision at 44.  Upon evaluation of the evidence submitted, Justice Mendez rejected Plaintiff's retaliation claim, finding that Plaintiff was a probationary employee whose employment had rightfully been terminated for his use of improper restraint on the resident during the Incident, and that Plaintiff had failed to tender evidence of Defendants' alleged bad faith.  Thus, thus the issues Plaintiff raises in this action were necessarily decided in the Article 78 proceeding and are decisive here.

Second, Plaintiff is barred from relitigating his claims in federal court because he had a full and fair opportunity to litigate his claims in his state court proceeding.  The Supreme Court has held that to provide such a "full and fair opportunity," state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause . . . ."  <u>Kremer</u>, 456 U.S. at 481.  The Second Circuit has held that, where a plaintiff had an opportunity to litigate his ADA and Rehabilitation Act claims in an Article 78 proceeding, plaintiff is collaterally estopped from bringing the same claims in federal court based on the same underlying facts.  <u>See Moran</u>, 1997 U.S. App. LEXIS 7173 at *4-7 (holding that plaintiff had a full and fair opportunity to litigate his claims under the ADA and Rehabilitation Act in an Article 78 proceeding where the state court made an independent determination based

on testimony presented at the proceeding that no such violations occurred, and therefore plaintiff's federal disability discrimination claims were barred through collateral estoppel).

The factual gravamen of Plaintiff's Article 78 action and the instant case is the same: Plaintiff claims that his termination was illegal because he was no longer a probationary employee and because it was motivated by retaliation for his disability leaves. Both of these issues were litigated in the Article 78 proceeding and resolved in the Mendez Decision. Justice Mendez held that Plaintiff was a probationary employee at the time of his termination and, credited the allegation that the juvenile was the initial aggressor. In light of the absence of evidence of a violation of law or bad faith on the part of the personnel who recommended Plaintiff's termination for use of excessive force, Justice Mendez found that the termination was neither arbitrary nor capricious. The latter determination necessarily constitutes a determination that the termination was not the product of retaliation.

Plaintiff argues that his claim is not collaterally estopped because he did not have an opportunity to contest Justice Mendez's determination in his Article 78 proceeding, and because Justice Mendez did not consider certain arguments and pieces of evidence in making his determination. Plaintiff's arguments are unavailing. Plaintiff had an opportunity to appeal Justice Mendez's decision, but did not take advantage of it, allowing the decision to become final. Furthermore, the Court has no reason to doubt that Justice Mendez's decision was based on a thorough evaluation of all of the evidence and arguments presented. A careful reading of the decision demonstrates that Justice Mendez considered numerous documents submitted by the parties, including the video of the incident, which Plaintiff repeatedly argues Justice Mendez did not watch. See Mendez Decision at 43 (citing "Video annexed to Pet. and Ans., Respondents Ans. Exh. 6"). Even assuming, arguendo, that Plaintiff is correct in his contentions, Justice

Mendez's decision not to rely on certain of Plaintiff's arguments or pieces of evidence in the record did not deprive Plaintiff of a full and fair opportunity to litigate his claims in the Article 78 proceeding.  See, e.g., Sikri v. Gilmore, No. 97 CIV. 2367 (BSJ), 1999 WL 156385, at *3 (S.D.N.Y. Mar. 23, 1999) (finding that proceedings before a city agency did not provide plaintiff with anything less than a full and fair opportunity to be heard where the agency ignored evidence presented by the plaintiff and instead adopted arguments made by defense counsel).  Nor does Plaintiff's failure to raise new legal arguments in his Article 78 proceeding warrant re-litigation of the same factual issues.  See Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir.2003) (finding plaintiff had full and fair opportunity to litigate at prior proceeding even though he and his counsel chose to present limited evidence in support of his case).

    The fact that Plaintiff now asserts discrimination and retaliation claims under the ADA and the Rehabilitation Act, in addition to such claims under state and local laws, does not protect the Second Amended Complaint from dismissal.  Where a state court rested its decision on the very same facts and circumstances as those subsequently raised in federal court under the guise of parallel federal claims, collateral estoppel applies.  See DiLauria v. Town of Harrison, 64 Fed. App'x 267, 269-70 (2d Cir. 2003) (plaintiff's ADA claims precluded by collateral estoppel because, although his Article 78 petition did not specifically raise claims for relief under the ADA, he described discriminatory actions that he believed influenced his employment termination and, therefore, state court "must be deemed to have rejected plaintiff's discrimination claims because" the state court described "[defendant's] determinations as 'supported by substantial evidence'"); Sank v. City Univ. of New York, No. 10-CV-4975 (RWS), 2011 WL 5120668, at *4 (S.D.N.Y. Oct. 28, 2011) (because plaintiff pursued discrimination and retaliation claims before the NYSDHR and state court, "collateral estoppel

now precludes [plaintiff] from pursuing . . . any other discrimination or retaliation claims in federal court based upon the very same facts and circumstances" asserted in prior proceedings).

For these reasons, Plaintiff is collaterally estopped from relitigating his discrimination and retaliation claims under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL in this Court.  In light of this determination, the Court need not address the parties' arguments regarding the merits of Plaintiff's claims.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted, with prejudice.  The Clerk of Court is respectfully directed to terminate docket entry no. 43, enter judgment dismissing the Second Amended Complaint, and close this case.

SO ORDERED.

Dated: New York, New York
March 30, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy mailed to:

Stanley Taylor
81 North Portland Avenue
Apt. 12H
Brooklyn, NY 11205